IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALLERGAN USA, INC., ALLERGAN HOLDINGS UNLIMITED COMPANY and EDEN BIODESIGN, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MSN LABORATORIES PRIVATE LIMITED, MSN PHARMACEUTICALS, INC., and SUN PHARMACEUTICAL INDUSTRIES LIMITED,<br><br>Defendants. | ) | C.A. No. 19-1727 (RGA)<br>(Consolidated) |

**JOINT STATUS REPORT ON THE IMPACT OF**
***IN RE CELLECT* ON CLAIM 40 OF THE ’356 PATENT**

The parties submit this joint status report on the impact of *In re Cellect*, No. 22-1293 on how the Court should resolve asserted claim 40 of the ’356 Patent, pursuant to the Court’s Order on August 29, 2023 (D.I. 481).

**Plaintiffs’ Position**

The Federal Circuit’s decision in *In re Cellect* does not change the arguments or analysis in Plaintiffs’ Post-Trial Answering Brief. This is because *Cellect* did not address the central issue in dispute here: whether a first-filed, first-issued patent having a patent term adjustment (“PTA”) can be found invalid for obviousness-type double patenting (“OTDP”) based on subsequently filed patents from the same family. The facts of *Cellect*—where the patentee extended the rights of the patent family through numerous later-filed applications resulting in multiple PTAs of varying lengths—are nothing like those at issue in the present case.

If anything, the *Cellect* court’s discussion of the applicable legal standards further confirms that Sun failed to prove by clear and convincing evidence that the ’356 Patent is invalid for OTDP

over the '709 Patent.[1] As the Federal Circuit has repeatedly held, the OTDP "doctrine is designed to prevent a patent owner from extending his exclusive rights to an invention through claims in a later-filed patent that are not patentably distinct from claims in the earlier filed patent." *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 999 (Fed. Cir. 2009); *see also Novartis AG v. Ezra Ventures LLC*, 909 F.3d 1367, 1374 (Fed. Cir. 2018) (same). *Cellect* is in full accord, explaining that claims extended by a PTA "are entitled to their full term, including the duly granted PTA, unless they are found to be later-filed obvious variations of earlier-filed, commonly owned claims." *In re Cellect*, No. 22-1293, 2023 WL 5519716, at *10 (Fed. Cir. Aug. 28, 2023); *see also id.* at *7 (OTDP "ties later-filed, commonly owned, obvious variations to the expiration date of an earlier-filed reference patent"), *8 (OTDP "ensure[s] that the applicant is not receiving an unjust extension of time").

Here, a PTA was granted only with respect to the first-filed, first-issued claims in the family (in the '356 Patent),[2] and the subsequently filed claims of the alleged reference patent (*i.e.*, the '709 Patent) had a terminal disclaimer filed over the first-filed, first-issued claims. This "does not raise the traditional concern with" OTDP, as there was no attempt "to subsequently 'secur[e] a

---

[1] Plaintiffs' brief identified as pending the doctrinal question of whether OTDP could ever apply to a PTA. D.I. 468 (Plfs. Brief) at 39 n.16. Although *Cellect* answered that question in the affirmative, the Federal Circuit's decision does not address Sun's burden of proof under the facts of this case. As Plaintiffs previously noted, "even if OTDP were to be found to apply to PTA . . . Sun still has not shown that it should be applied here." *Id.* Moreover, the *Cellect* panel's ruling could potentially be altered on panel rehearing or rehearing *en banc*, as well as on further appeal. As described in Plaintiffs' brief, OTDP should not be available to curtail PTA, an independent reason to reject Sun's arguments.

[2] Although the '356 Patent and '709 Patent share a common priority date, the '709 Patent is "later-filed" for OTDP purposes because the application from which it issued was filed after the application that led to the '356 Patent. *Novartis Pharms. Corp. v. Breckenridge Pharm. Inc.*, 909 F.3d 1355, 1357-58 (Fed. Cir. 2018) (characterizing patent sharing common priority date as "later-filed" based on the filing date of the application that led to patent issuance); *Mitsubishi Tanabe Pharma Corp. v. Sandoz, Inc.*, 533 F. Supp. 3d 170, 211-14 (D.N.J. 2021) (same).

second, later-expiring patent for the same invention." *Ezra*, 909 F.3d at 1374-75 (alteration in original), 1375 n.4 (finding that, "[b]ecause . . . the '565 patent is not a double patenting reference for the '229 patent," there was no need to continue the OTDP analysis); *see also Merck Sharp & Dohme Corp. v. Teva Pharms. USA, Inc.*, 217 F. Supp. 3d 782, 787 (D. Del. 2016) (declining to "us[e] the '781 patent as a reference patent to cut short the '353 patent's (the first issued parent patent) term of exclusivity" because "[t]his is not an instance of a patentee seeking to extend the patent term with 'sequential' applications").

*Cellect* had no occasion to address such facts. There, the patentee "contend[ed] that the Board erred in determining that whether or not a patent is unpatentable for O[T]DP is determined based on the date of expiration of a patent that includes any duly granted PTA pursuant to 35 U.S.C. § 154." 2023 WL 5519716, at *4. Given the web of later-filed patents being challenged for OTDP—which were pursued years after the original priority application—the patentee in *Cellect* never contested the status of any reference patent, and instead focused its appeal on arguing that PTAs are broadly exempt from OTDP as a matter of law. The first-filed, first-issued claims were not at issue. This is in stark contrast to the facts of the present case, as seen below:

**<u>Patent Family – *In re Cellect*</u>**



**<u>Patent Family – *Allergan v. Sun*</u>**




In fact, the Patent Office's briefing on appeal in *Cellect* specifically distinguished the facts of this case—*i.e.*, where the challenged patent was filed and issued before the purported reference patent—from those at issue in *Cellect*. Ex. A, Patent Office Resp. Brief at 26 ("the Board found that in *Mitsubishi*, the challenged patent issued before the reference patent, unlike the facts related to Cellect's challenged patent"). In short, neither *Cellect*'s holding that "the expiration date of the patent after PTA has been added" must be used in an OTDP analysis nor anything else in the Federal Circuit's decision justifies cutting short the term of the first-filed, first-issued claims of the '356 Patent, including the duly granted PTA. 2023 WL 5519716, at *9. And other courts have refused to reach such an unjust and inequitable result. *See Mitsubishi*, 533 F. Supp. 3d at 214 (applying above-quoted OTDP principles from *Ezra* to conclude that later-filed patent "cannot be used as a reference" against earlier-filed, earlier-issued patent); *Amgen, Inc. v. Sandoz Inc.*, No. 16-11026, 2021 WL 5366800, at *26-27 (D.N.J. Sept. 20, 2021) (declining to apply OTDP to earlier-filed, earlier-issued patent where differing expiration date was due solely to a PTA).

Retaining the full PTA of the '356 Patent would also be consistent with the longstanding public policy underlying the OTDP doctrine that "[t]he public should . . . be able to act on the assumption that upon the *expiration* of the patent it will be free to use not only the invention claimed in the patent but also modifications or variants which would have been *obvious* to those

of ordinary skill in the art at the time the invention was made . . . ." *In re Longi*, 759 F.2d 887, 893 (Fed. Cir. 1985) (emphasis in original) (quoting *In re Zickendraht,* 319 F.2d 225, 232 (C.C.P.A. 1963) (Rich, J., concurring)). As the Federal Circuit has explained, this policy focuses on "ensur[ing] that the public gets the benefit of the invention after the original period of monopoly expires." *Abbvie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*, 764 F.3d 1366, 1373 (Fed. Cir. 2014). Here, the public can freely use the eight compounds of claim 40 of the '356 Patent, including eluxadoline, once the original period of monopoly for this patent family has expired. The grant three years later of claim 5 of the '709 Patent, directed to eluxadoline alone, did not take anything from the public—the right to use the eight compounds of the '356 Patent, including eluxadoline, was already subject to the full term of the '356 Patent, including its PTA.

The "risk of separate ownership" concerns raised by the Federal Circuit in *Cellect* are also inapplicable here. 2023 WL 5519716, at *10. Sun's alleged reference patent already has a terminal disclaimer over the '356 Patent, which provides that "any patent so granted on the instant application shall be enforceable only for any during such period that it and the prior patent are commonly owned." Ex. B, Terminal Disclaimer at 1. There is thus no risk that a split in ownership could lead to harassment of patent infringers by multiple owners. *See, e.g.*, *In re Fallaux*, 564 F.3d 1313, 1319 (Fed. Cir. 2009) (explaining that "a terminal disclaimer filed in this case would have been effective to" avoid any potential "harassment by multiple assignees").[3]

On the other hand, nullifying the duly authorized PTA of the '356 Patent—which the undersigned believes would constitute the first and only time an original, first-issued patent was found invalid for OTDP over a subsequent family member—would contradict decades of OTDP

[3] To the extent the Federal Circuit were to find otherwise, a terminal disclaimer can be filed at any time before the expiration of the reference patent to cure any OTDP. *Boehringer Ingelheim Int'l GmbH v. Barr Lab'ys, Inc.*, 592 F.3d 1340, 1346 (Fed. Cir. 2010).

precedent requiring proof of not just a timewise extension of patent rights (which, as explained above, does not exist here), but one that is unjustified. OTDP is an equitable doctrine that takes into account equitable concerns, such as the potential for gamesmanship. *See, e.g., AbbVie*, 764 F.3d at 1373-74 (applying OTDP to prevent "undue patent term extension" where "applicant cho[se] to file separate applications for overlapping subject matter and to claim different priority dates for the applications"); *Cellect*, 2023 WL 5519716, at *10 (affirming Board's finding that "equitable concerns underlying ODP, including an improper timewise extension of a patent term and potential harassment by multiple assignees" were "present"). It would be an inequitable result to prematurely claw eluxadoline into the public domain, otherwise covered by claim 40 of the '356 Patent, by virtue of claim 5 of the '709 Patent—a result that *Cellect* neither demands or suggests. Sun has not proven, and cannot prove, that the facts here implicate gamesmanship or any other equitable concern.

For all of the above reasons, and those set forth in Plaintiffs' Post-Trial Answering Brief, Sun has failed to assert a proper reference patent with respect to the '356 Patent and its OTDP defense should be rejected accordingly.

**Defendant Sun's Position**

The Federal Circuit's recent decision in *In re Cellect, LLC* resolves in Sun's favor the parties' legal dispute over whether the '356 patent-in-suit is invalid based on the doctrine of obviousness-type double patenting ("OTDP" or "ODP"). *See* D.I. 462 at 23–25; D.I. 471 at 15; *see also* D.I. 414-1 at ¶¶ 204-215 (underlying facts concerning Sun's OTDP challenge are undisputed). In post-trial briefing, the parties disputed whether "patents extended by a PTA [patent term adjustment] are subject to OTDP challenges." D.I. 462 at 25. The parties further agreed this legal issue was then-pending before the Federal Circuit in the *Cellect* case. *See* D.I. 468 at 39 n.16;

D.I. 471 at 15. Plaintiffs have no legitimate validity argument in view of the recent *Cellect* decision.

There, the Federal Circuit confirmed OTDP "is intended to prevent a patentee from obtaining a time-wise extension of patent for the same invention or an obvious modification thereof," and "prevents an inventor from claiming a second patent for claims that are not patentably distinct from the claims of a first patent." *In re Cellect*, No. 22-1293, 2023 WL 5519716, at *7 (Fed. Cir. Aug. 28, 2023). "A crucial purpose of ODP is to prevent an inventor from securing a second, later-expiring patent for non-distinct claims." *Id.* The Federal Circuit adopted Sun's view of the law by "conclud[ing] that ODP for a patent that has received PTA, regardless of whether or not a terminal disclaimer is required or has been filed, *must be based on the expiration date of the patent **after** PTA has been added*." *Id.* at *9 (emphases added).

As laid out in Sun's post-trial briefing, asserted claim 40 of the '356 patent is not patentably distinct from claims of the '709 and '011 patents ("reference patents"). *See* D.I. 462 at 24. Plaintiffs do not dispute this. *See* D.I. 468 at 39–40. The '356 patent originally would have expired before the reference patents, but it received a PTA of 467 days. *See* D.I. 414-1 at ¶¶ 204–205. There can be no serious dispute that, in view of *Cellect*, the '356 patent's expiration date "after PTA has been added" is the relevant expiration date for the OTDP analysis. That date admittedly post-dates the reference patents. *See* D.I. 468 at 38 ("The '356 Patent expires after the '079 Patent because of [PTA]."). Given that the '356 patent is admittedly not patentably distinct from the reference patents, the later expiring '356 patent is invalid for OTDP under a plain application of *Cellect*.

Critically, the *Cellect* decision addressed and rejected Plaintiffs' argument that OTDP in this circumstance requires a showing of "gamesmanship" or an "improper extension." D.I. 468 at 39. The Federal Circuit agreed with the USPTO's position "that gamesmanship is not the only

issue, and that the mere presence of an unjustified extension is sufficient for the Board to find that claims are unpatentable under ODP," holding that "[a]n applicant's ability to show that it did not engage in gamesmanship in obtaining a grant of PTA is not sufficient to overcome a finding that it has received an unjust timewise extension of term." 2023 WL 5519716, at *10–11. In short, as the Federal Circuit held, "there is no basis for an examiner"—or, applied here, this Court—"to inquire into the intent of an applicant, or credit it." *Id.* at *11.

Plaintiffs try to repackage its no-gamesmanship argument by pointing to a meaningless factual distinction between this case and the facts underlying the *Cellect* case—arguing it would be unfair to apply OTDP when "the challenged patent was filed and issued before the purported reference patent." But such policy arguments have gained no traction at the Federal Circuit. While Plaintiffs cite a sentence in Respondent's brief not addressed in the Federal Circuit's opinion to purportedly support their policy argument, they fail to address, much less distinguish, controlling authority cited in Sun's post-trial briefing. In *Gilead*, the Federal Circuit held that "the determining factor" for assessing which patent qualifies as an "earlier" OTDP reference is the patents' expiration dates, establishing the general rule that "an earlier-expiring patent can qualify as an [OTDP] reference for a later-expiring patent." *Gilead Scis., Inc. v. Natco Ltd.*, 753 F.3d 1208, 1215-17 (Fed. Cir. 2014).[4] Neither the filing date nor the issuance date of the challenged patent is pertinent to this inquiry. *See id.* at 1213 (noting "we see little import here in the fact that the '483 patent [i.e., the challenged patent] issued first" and finding that "it is the comparison of Gilead's patent expiration dates that should control"); *see also Cellect*, 2023 WL 5519716, at *7 ("[A]n ODP determination depends on an assessment of obviousness, i.e., whether the claims of a *later-*

[4] *Gilead* found OTDP of a later-filed, earlier-issued patent with a later expiration date than an earlier-filed, later-issued patent from a different family.

*expiring* patent would have been obvious over the claims of an *earlier-expiring* patent owned by the same party.") (emphases added).[5]

To be sure, as Plaintiffs note, the Federal Circuit could hear the *Cellect* case *en banc*, or Plaintiffs could file a terminal disclaimer, but neither hypothetical situation has occurred. Thus, a plain reading and application of *Cellect* supports a finding that the '356 patent is invalid as a matter of law for OTDP.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Plaintiffs Allergan USA, Inc., Allergan Holdings Unlimited Company, Allergan Pharmaceuticals International Limited, Eden Biodesign, LLC, and Janssen Pharmaceutica NV*

HEYMAN ENERIO GATTUSO & HIRZEL LLP

*/s/ Dominick T. Gattuso*

Dominick T. Gattuso (# 3630)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
dgattuso@hegh.law

*Attorneys for Defendant/Counterclaim Plaintiff Sun Pharmaceutical Industries Ltd.*

Dated: September 6, 2023

[5] Plaintiffs' reliance on pre-*Cellect* district court decisions is misplaced because the Federal Circuit has now rejected the legal analysis underlying those decisions.